IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL SECURITY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 20-1514 (MN) |
| ) | |
| DANA M. BERRY and S. BENJAMIN ) | |
| PARSONS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

James S. Green, Jr., Jared T. Green, SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, DE – attorneys for Plaintiff

Joseph C. Handlon, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – attorneys for Defendants

June 17, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Defendants Dana M. Berry ("Berry") and S. Benjamin Parsons ("Parsons") (collectively, "Defendants") to dismiss the Complaint for failure to state a claim on the grounds that (1) Plaintiff International Security, LLC ("Plaintiff" or "International Security") does not plausibly allege a due process claim under 42 U.S.C. § 1983 and (2) Plaintiff's state-law claim is barred by qualified immunity and the State Tort Claims Act. (*See* D.I. 3). For the reasons set forth below, Defendants' motion is GRANTED.

**I.      BACKGROUND**

Plaintiff International Security is a Delaware limited liability company that operates as a private security agency. (*See* Compl. ¶ 1).[1] According to the Complaint, International Security has been duly licensed to provide private security pursuant to the Private Investigators and Private Security Agencies Act at all times relevant to this case except for a period between March 5, 2020 and April 3, 2020. (*Id.*). Defendant Berry is a Delaware State Police sergeant who was the supervisor of the Professional Licensing Section at all times relevant to the present action. (*Id.* ¶ 2). Defendant Parsons is a Delaware State Police captain who was the Director of the Delaware State Police Bureau of Investigation at all times relevant to the present action. (*Id.* ¶ 3).

As of March 5, 2020, International Security had contracts to provide private security services to at least Luther Senior Services, Inc., the Wilmington Housing Authority, and SoFi. (Compl. ¶¶ 5-6). On March 5, 2020, Defendant Berry informed Alfred Izquierdo – the president of International Security – that she had learned that International Security was employing security

---

[1]     The Complaint and its Exhibit A are attached to the Notice of Removal and appear at D.I. 1-1 from pages 6 to 13. Although the Court prefers citations to D.I. numbers, doing so here makes it difficult to cite to paragraph numbers. As such, the Court cites to the shorthand "Compl."

1

officers that were not properly licensed. (*Id.* ¶ 7). According to the Complaint, Izquierdo requested that information in writing so that he could consult with an attorney but, instead of providing the information, Defendants Berry and Parsons "unilaterally determined, without a hearing" to immediately suspend International Security's license. (*Id.* ¶¶ 8-9; *see also id.* at Ex. A (Parsons's letter notifying International Security of emergency suspension of its license to provide private security)). The Complaint alleges that no emergency existed sufficient to permit the immediate suspension of International Security's license. (*Id.* ¶ 14). The next day, on March 6, 2020, Berry apparently traveled to SoFi offices in Claymont and to Luther Towers I & II and demanded that all International Security private officers leave the buildings immediately. (*Id.* ¶¶ 10-11). The Complaint also alleges that "Berry, or Parsons, or someone acting on their behalves and under their direction" notified the Wilmington Housing Authority that International Security was not licensed and, as a result, its security personnel were required to leave the premises. (*Id.* ¶ 12). Because of the suspension of International Security's license, SoFi, Lutheran Senior Services, Inc., and Wilmington Housing Authority apparently cancelled their contracts with International Security. (*Id.* ¶ 13).

On September 29, 2020, International Security filed the present action in Superior Court for the State of Delaware, alleging that Defendants Berry and Parsons tortiously (and in bad faith) interfered with International Security's private security contracts with SoFi, Lutheran Senior Services, Inc., and the Wilmington Housing Authority and, further, that Defendants deprived International Security of certain rights secured by the Constitution and the laws of the United States under 42 U.S.C. § 1983. (*See generally* Compl.). In particular, as to the § 1983 claim, the Complaint alleges that Defendants deprived International Security of "its Constitutional right to contract, to engage in the occupations of life, and to earn a living." (*Id.* ¶¶ 27-28).

On November 10, 2020, Defendants filed a notice of removal of this case to federal court. (*See* D.I. 1). Then, on November 13, 2020, Defendants filed the present motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the Complaint fails to plausibly allege a constitutional violation under § 1983. (*See* D.I. 3 & 4; *see also* D.I. 4 at 7-15). Defendants also seek dismissal of the tortious interference claim because Defendants' actions were a valid exercise of the State's police power and because International Security failed to exhaust its administrative remedies. (*See* D.I. 4 at 15-17).

## II.  LEGAL STANDARDS

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.

### III. DISCUSSION

#### A. Plaintiff's Due Process Claim Under § 1983

The Complaint alleges that Defendants Berry and Parsons deprived Plaintiff of its "Constitutional right to contract, to engage in the occupations of life, and to earn a living." (Compl. ¶ 28). The crux of Plaintiff's claim under § 1983 seems to be that the temporary suspension[2] of Plaintiff's private security license violated its due process rights guaranteed by the Fourteenth Amendment. Claims under the Fourteenth Amendment may be either substantive or procedural due process claims. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) ("[O]n its face this constitutional provision speaks to the adequacy of state procedures, [but] the Supreme Court has held that the clause also has a substantive component."). Although not clear from the pleading, it appears from the briefing that Plaintiff's claim is limited to a violation of procedural due process rights. (*See* D.I. 9 at 2 n.2 (Defendants' reply brief noting that Plaintiff only defended procedural due process); *see also* D.I. 7 (Plaintiff's answering brief silent as to substantive due process)). Defendants argue that dismissal is warranted here because Plaintiff fails to identify the "specific constitutional right" at issue in this case and, further, because Plaintiff has not adequately pleaded a procedural due process claim. (D.I. 4 at 7-12). Additionally, Defendants argue that, to the extent Plaintiff is suing them in their individual capacities, any claim for damages is barred by qualified immunity.[3] (*Id.* at 13-15).

---

[2] Although outside the pleading and not used in reaching a decision here, Defendants point out that emergency suspension has been lifted after the parties discussed the matter. (D.I. 4 at 6 n.8). The Complaint itself also suggests as much – *i.e.*, that Plaintiff is only seeking monetary damages indicates to the Court that Plaintiff's license has been reinstated.

[3] In its answering brief, Plaintiff never addresses this point – *i.e.*, whether Defendants are being sued in their individual capacities. The Court assumes that they are. *See, e.g., Kade v. Workie*, 238 F. Supp. 3d 625, 631 (D. Del. 2017) (assertion of intentional tort claims and seeking of punitive damages "strongly suggests" defendant being sued in individual capacity).

"To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)); *accord L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016); *see also Kedra v. Schroeter*, 876 F.3d 424, 436 n.6 (3d Cir. 2017) (acknowledging this requirement). Moreover, to prevail on a procedural due process claim under § 1983, a plaintiff must demonstrate: (1) deprivation of an individual interest in "life, liberty, or property" under the Fourteenth Amendment and (2) a failure to provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234-35 (3d Cir. 2006). "The first step in analyzing a procedural due process claim is to determine whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty, or property." *Thomas v. Town of Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003) (cleaned up); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) (a court must first determine "the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all").

In their opening brief, Defendants argue that Plaintiff has not adequately identified the constitutional right violated here, noting that the Complaint cites no provision of the Constitution. (D.I. 4 at 7). Plaintiff responds that the constitutional right purportedly at issue is Plaintiff's "property right in its business." (D.I. 7 at 7). In their reply, Defendants do not respond to this argument or otherwise contest that a property right in a business may be a constitutionally protected right. *See S. Allegheny Pittsburgh Rest. Enterprises, LLC v. City of Pittsburgh*, 806 F. App'x 134, 139 (3d Cir. 2020) ("[A] business is an established property right entitled to protection under the Fourteenth Amendment." (quoting *College Sav. Bank v. Florida Prepaid Postsecondary*

5

*Edu. Expense Bd.*, 131 F.3d 353, 361 (3d Cir. 1997))). Because it is apparently undisputed (and supported by Third Circuit law), the Court assumes that the constitutional right at issue in Plaintiff's due process claim is Plaintiff's property right in its private security business.

Turning to the second part of the inquiry, the Court must determine whether Plaintiff was deprived of a constitutional right without due process of law. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *Alvin*, 227 F.3d at 116. Here, it is necessary to examine the relevant statute to determine whether procedural remedies were available to Plaintiff.

As Plaintiff alleges in its complaint, the Delaware law at issue here is the Private Investigators and Private Security Agencies Act, 24 *Del. C.* § 1301 *et seq.* ("the Private Security Agencies Act" or "the Act"). (*See, e.g.*, Compl. ¶¶ 1 & 5). That statute and the associated regulations[4] set forth the requirements and procedures for licensing entities and persons that wish to provide, *inter alia*, private security services in Delaware. In particular, the Private Security Agencies Act requires any private security agency and its employed guards to be licensed under the Act. *See* 24 *Del. C.* § 1313(a); *see also id.* §§ 1314 & 1318. The Board of Examiners of Private Investigative, Private Security and Armored Car Agencies ("the Board") is responsible for determining the qualifications of private security agencies and private security guards and has the power to deny, suspend or revoke any application or license. *See id.* §§ 1305(a), (c) & (d). When

---

[4] *See* 24 *Del. C.* § 1305 (Delaware Board of Examiners of Private Investigative, Private Security and Armored Car Agencies has the power to promulgate regulations).

issued, the licenses are provided by the Delaware State Police Professional Licensing Section ("the Licensing Section"). *Id.* § 1313(a); *see also id.* § 1302(23). The Licensing Section also has the power to investigate any violations of the Act (or accompanying regulations), to coordinate hearings regarding license suspensions and revocations and to issue emergency suspensions. *Id.* §§ 1306-08. The Act provides that emergency suspensions may be issued with or without notice or hearing "upon a finding that an emergency exists that requires immediate action to protect the health and safety of the public." *Id.* § 1308. In that situation, the affected licensee must be given a hearing within thirty to ninety days if one is requested. *Id.* This emergency suspension scenario is at the heart of this case – Defendants argue that an emergency existed and Plaintiff argues the opposite.

In the Complaint, Plaintiff alleges without any factual support that "[a]t no time on March 5, 2020, or thereafter, did an emergency exist . . . that required immediate action to protect the health and safety of the public." (Compl. ¶ 14). This allegation stands in contrast to the letter that Plaintiff received from Defendant Parsons regarding an emergency suspension of Plaintiff's license with instructions on a right to a hearing (and how to request such a hearing). Importantly, this letter is attached to the Complaint. (Compl., Ex. A ("Subject: Class C Private Investigative and Private Security Agency Emergency Suspension International Security License #09-134-C")). In the Court's view, Plaintiff's allegation that no emergency existed is simply a bald assertion that parrots the language of the Private Security Agencies Act. That is, Plaintiff conclusorily asserts that no emergency existed so as to show that the "emergency suspension" conditions of the Act were not met. And critically, Plaintiff never alleges that its private security guards *were* properly licensed at the time Defendants suspended Plaintiff's license and removed guards from several

premises.[5] Without more, the Court would be making an unreasonable inference in concluding that no emergency existed based on Plaintiff's bare allegation when (1) Defendant Parsons referenced an emergency suspension in his letter and (2) common sense suggests that using unlicensed private security guards could pose an emergency threat to public health or safety.

With an emergency suspension,[6] Plaintiff was required to follow the procedures set forth in § 1308 of the Act. *See* 24 *Del. C.* § 1308(b). As evidenced by the Complaint, Plaintiff was informed of its procedural remedies in the letter from Defendant Parsons. (Compl., Ex. A). Yet the Complaint is silent as to whether Plaintiff availed itself of these procedural remedies. Plaintiff never alleges it attempted to obtain a hearing regarding the emergency suspension and was refused or that the procedures provided by the Act were patently inadequate. That the remedies here are post-deprivation for a temporary suspension does not mean that Plaintiff was necessarily deprived of due process. *See, e.g.*, *In re SimmsParris*, 448 F. App'x 268, 271 (3d Cir. 2011) ("An interim suspension of a professional license pending final disposition does not require a pre-suspension hearing."). Because the Court cannot reasonably infer that Plaintiff attempted to use the procedural remedies available under the Act, Plaintiff's procedural due process claim must fail. *See Evans-Sampson v. Pennsylvania Dep't of Hum. Servs.*, 838 F. App'x 712, 716 (3d Cir. 2020) ("In order to state a claim for failure to provide due process, a litigant must also have used any procedures

---

[5] It seems beyond dispute that use of unlicensed security guards is a violation of the Act. 24 *Del. C.* § 1313(a).

[6] The Complaint also shows that Defendant Berry contacted Plaintiff's president upon first hearing that Plaintiff was using unlicensed security guards to provide private security services. (Compl. ¶ 7). Instead of cooperating with Berry or providing proof of licensure, Plaintiff's president requested that Berry provide the same information in writing so he could consult an attorney. (*Id.* ¶ 8). It would be somewhat nonsensical for Plaintiff to be able to refuse to cooperate, create an emergency situation by delaying information-gathering, and then complain that no emergency existed sufficient to allow a temporary suspension like the one here.

8

available to challenge the deprivation, unless they were unavailable or inadequate."); *see also Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."). Plaintiff has failed to state a procedural due process claim and the § 1983 claim will be dismissed.[7]

Because Plaintiff is only seeking damages, Defendants also argue that dismissal is warranted because they are protected in their individual capacities by qualified immunity. (*See* D.I. 4 at 13-15; *see also* D.I. 9 at 4-5). To survive a claim of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017) (cleaned up). Courts have discretion in determining which of the two prongs in the qualified immunity test to resolve first. *See Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015). In its response to Defendants' qualified immunity arguments, Plaintiff argues that Defendants violated Plaintiff's "clearly established rights" to contract, to engage in common occupations and to earn a living. (*See* D.I. 7 at 10-11). Plaintiff seemed to suggest in defending the due process claim that those rights relate to the property right in Plaintiff's business. (*Id.* at 7).[8] As related to the property right in his business, the Court has already determined that Plaintiff failed to adequately allege a procedural due process violation here, thereby rendering it is

---

[7] The Court would reach the same conclusion if the constitutional right at issue was a right "to contract, to engage in the common occupations of life, [or] to earn a living," as recited in the Complaint. (Compl. ¶¶ 27-28). The Court would still be unable to conclude that Plaintiff availed itself of the procedural remedies under the Act.

[8] The Complaint refers to Plaintiff's constitutional right to contract, to engage in common occupations and to earn a living. (Compl. ¶¶ 14 & 27). It does not refer to a right in Plaintiff's business. Nevertheless, the parties in their briefing did not dispute that the rights referenced in the Complaint describe property rights in its business.

9

unnecessary to reach the second prong of the qualified immunity test. To the extent Plaintiff would argue that other "constitutional rights" specifically stated in the Complaint have been violated, the Court reaches the same conclusion on qualified immunity. The same conduct by Defendants is at issue whether the constitutional right is Plaintiff's property right in its business or the other identified rights. Regardless of which right is at issue, the Court nevertheless finds that Plaintiff has failed to adequately allege a constitutional violation because procedural remedies were available that Plaintiff apparently failed to pursue. Defendants are protected from suit by qualified immunity.

### B. Plaintiff's Claim of Tortious Interference with Contracts

The Complaint also includes a claim against Defendants for tortious interference with International Security's contracts with Sofi, Lutheran Senior Services, Inc., and the Wilmington Housing Authority. (*See* Compl. ¶¶ 20-25). This claim arises under state law. There is no allegation before the Court that there is diversity of citizenship such that diversity jurisdiction may exist over this claim.[9] Therefore, the only basis for jurisdiction over this claim is supplemental jurisdiction under 28 U.S.C. § 1367. Because Plaintiff's claim arising under federal law will be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim. *See* 28 U.S.C. § 1367(c)(3).[10]

---

[9] Indeed, there are no allegations whatsoever as to Defendants' citizenship. (*See* Compl. ¶¶ 2-3).

[10] Although Plaintiff suggested in a footnote that it may seek leave to amend its Complaint at some unspecified future time (*see* D.I. 7 at 14 n.1), there is no such request pending. Additionally, Defendants' assertion that amendment would be futile was only conclusory. (D.I. 4 at 12). Thus, the Court cannot address a potential amendment at this time. In any event, on the June 17, 2021 teleconference with the Court, the parties agreed that remand of the case is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (D.I. 3) is GRANTED and the Court will decline to exercise supplemental jurisdiction over the state-law claim. An appropriate order will follow.

11